UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

GLORIA K.,
    Plaintiff,

v.

MARTIN J. O'MALLEY,
Commissioner, Social Security
Administration,
    Defendant.

C.A. No. 23-136-JJM-PAS

## ORDER

Before the Court are competing motions—Plaintiff Gloria K.'s Motion to Reverse or Remand the Decision of the Commissioner, and Defendant Commissioner Martin J. O'Malley's[1] Motion to Affirm the Decision of the Commissioner. ECF Nos. 11 and 13. Gloria applied for Supplemental Security Income (SSI) and was denied after the ALJ determined that she was not disabled. ECF No. 6.

Gloria appeals to this Court on two grounds. First, she argues that substantial evidence does not support the ALJ's finding disregarding the opinion of her treating doctor, Monissa Solberg, M.D., and that the ALJ misapplied the legal standard. Second, she argues that the vocational expert who testified at her benefits hearing did not explain the basis and methodology for determining the number of jobs that

---

[1] Under Fed. R. Civ. P. 25(d), the Court has substituted Martin J. O'Malley, the new Commissioner of the Social Security Administration, for Acting Commissioner Kilolo Kijakazi as the Defendant.

were purportedly available.[2] The Commissioner counters that substantial evidence supported the ALJ's finding about Dr. Solberg, and that Gloria waived her right to challenge the vocational expert's opinion.

After a thorough review of the entire record, and consistent with the law in this Circuit, the Court GRANTS the Motion to Reverse and Remand, and DENIES the Motion to Affirm.

## I. FACTS

Gloria is 47 years old, single, and lives with her two adult children. She attended school only through the ninth grade. She previously had a job cleaning up construction debris but has not worked for the past fourteen years. She is bipolar and has been diagnosed with depressive disorder, anxiety disorder, and post-traumatic stress disorder. ECF No. 6 at 29, 53-59.

The ALJ determined that although Gloria had multiple "severe" impairments, she could perform a full range of work with limitations. *Id.* at 29-33. The vocational expert testified that although she could no longer work in construction, she could still find work as a kitchen helper, a housekeeper, or a merchandise marker, even with these limitations. *Id.* at 38. Therefore, the ALJ found that she was not disabled. *Id.*

This conclusion was based on Gloria's testimony, the medical findings of State agency physicians and psychologists, and other evidence in the record. *Id.* at 33-38.

---

[2] She also argues that the Commissioner failed to carry his burden to show why a person who is not "capable of performing more than simple, routine instructions" would be able to carry out these jobs.

The opinion of her treating doctor, Dr. Monissa Solberg, was discounted as having "little persuasive value." *Id.* at 36.

## II.   STANDARD OF REVIEW

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The Court "must uphold the Secretary's findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [their] conclusion." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 647 F.2d 218, 222-23 (1st Cir. 1981) (citing *Consol. Edison Co.*, 305 U.S. at 229). If substantial evidence supports the Commissioner's decision, the Court must affirm it, "even if the record arguably could justify a different conclusion." *Rodriguez Pagan v. Sec'y of Health & Hum. Servs.*, 819 F.2d 1, 3 (1st Cir. 1987). That said, the ALJ's findings are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## III.   ANALYSIS

In analyzing whether Dr. Solberg's opinion was properly excluded, the Court must decide whether substantial evidence supports the ALJ's findings, and whether the ALJ applied the correct legal standards. *See Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 655–56 (1st Cir. 2000). The Court finds that neither standard is met.

3

### A.  Substantial Evidence

Dr. Monissa Solberg, M.D., is a board-certified psychiatrist. She first saw Gloria in December 2019 upon a referral from a former doctor. She treated Gloria through at least August 2021. She found that Gloria had marked limitation in many areas and suffered from major depressive disorder, generalized anxiety disorder, and mood disorder and that she would have trouble working at a regular job on a sustained basis. ECF No. 6 at 34-35, 353-54.

The ALJ held that Dr. Solberg's findings have "little persuasive value" and rejected her opinion on the grounds that its "extreme findings are not consistent with her own treatment notes and with the claimant's activities of daily living." *Id.* at 36. As support for this conclusory finding, he notes that at times Gloria was "feeling better," that she did not want "a change in medication," that "it was going well with her therapist," and that she visited her sister in Florida. *Id.* The ALJ adds that he should reject Dr. Solberg's opinions because she noted Gloria was "alert, oriented and in no acute distress," and that once, she denied "extreme mood changes, anxiety, depression, or depressive mood" for a period of four weeks. *Id.*

A review of the record, and in particular Dr. Solberg's medical records, shows that substantial evidence does not support the ALJ's rejection of her opinions and his finding that they are of "little persuasive value." Overwhelming evidence in her records supports Dr. Solberg's opinions. *Id.* at 321-26 and 353-54. The ALJ cherry-picked common, non-specific findings in her records (*e.g.*, "feeling better," things "going well with her therapist," she was "alert, oriented and in no acute distress") to

support his contrary opinion. *Id.* at 36. Thus, the Court finds that the ALJ's opinion was not supported by substantial evidence.

### B.    Legal Standard

The ALJ must evaluate the relative persuasiveness of the medical opinion evidence in terms of five specified factors.

> The five factors *** are <u>supportability</u> (the relevance of the opinion's cited objective medical evidence), <u>consistency</u> (how consistent the opinion is with all of the evidence from medical and non-medical sources), <u>treatment/examining relationship</u> (including length of treatment relationship, frequency of examinations, purpose of treatment relationship, and existence and extent of treatment/examining relationship), <u>specialization</u> (the relevance of the source's specialized education or training to the claimant's condition), and what the Administration refers to as "<u>other factors</u>" (the medical source's familiarity with the claimant's medical record as a whole and/or with the Administration's policies or evidentiary requirements) . . . . (emphasis supplied). Of the five factors, the "most important" are supportability and consistency.

*Shaw v. Saul*, No. 19-CV-730-LM, 2020 WL 3072072, at *4 (D.N.H. June 10, 2020) (citing 20 C.F.R. §§ 404.1520c(a), 404.1520c(b)(2), 416.920c(a), and 416.920c(b)(2)). A review of Dr. Solberg's opinions shows that her opinions are supportable and consistent, that she has a long-standing regular treatment relationship with Gloria, and that she is a highly qualified specialist in this area.

### 1.    *Supportability*

Dr. Solberg's opinions about Gloria's disabilities are strong and detailed. She diagnosed Gloria with Major Depressive Disorder, Generalized Anxiety Disorder, and Mood Disorders. ECF No. 6 at 321. She noted clinical findings of "anxiety, depression, low motivation, sleep disturbance, [and] poor focus." *Id.* She recorded

5

that Gloria had "[s]ignificant cognitive decline from a prior level of functioning in one or more cognitive areas: Complex attention; Executive function; Learning and memory; Language; Perceptual-motor; or Social cognition." *Id.* at 322. She also found that Gloria suffered from depressed mood, sleep disturbances, decreased energy, difficulty concentrating or thinking, detachment from social relationships, and that she was easily fatigued. *Id.*

Dr. Solberg documented Gloria's inability to regularly do work-related activities including remembering work-like procedures, maintaining attention for two-hour segments, being punctual and maintaining regular attendance, sustaining an ordinary routine without special supervision, and completing a normal workday and workweek without interruption from psychologically based symptoms. *Id.* at 323. She noted that Gloria would have difficulty performing at a consistent pace without an unreasonable number and length of rest periods, responding appropriately to changes in a routine work setting, dealing with normal work stress, understanding and remembering detailed instructions, carrying out detailed instructions, setting realistic goals, making plans independently of others, and dealing with stress of semi-skilled and skilled work. *Id.* at 323-24.

Gloria would be disabled, according to Dr. Solberg, because of stress in the following work settings: speed, precision, complexity, deadlines, working within a schedule, making decisions, exercising independent judgment, completing tasks, working with other people, dealing with the public (strangers), dealing with

6

supervisors, getting to work regularly, and remaining at work for a full day. *Id.* at 325.

Dr. Solberg found that Gloria would be absent from work about four days per month, that her impairments lasted or could be expected to last at least twelve months, and that her impairments were reasonably consistent with the symptoms and functional limitations described in the evaluation.[3] *Id.*

A year later Dr. Solberg again opined about Gloria's disability, finding that she had marked limitations and that her disability seriously limited her ability to understand, remember, and apply information. *Id.* at 353. She found that Gloria was limited in her ability to interact with others, to concentrate, persist or keep pace, and to adapt or manage herself. *Id.* She estimated that Gloria would be "off task" at work at least twenty-five percent of the time. *Id.* These observations are highly relevant, and they are based on objective medical evidence.

### 2.   *Consistency*

Dr. Solberg's findings are consistent with other evidence in the record, including Gloria's psychiatric evaluation at Butler Hospital, where she reported a "significant decline in functioning," was considered a high suicide risk, and was hospitalized for two days. *Id.* at 329-41. Her diagnosis on discharge was "Major depressive disorder, recurrent episode, severe." *Id.* at 340.

---

[3] The ALJ found that Dr. Solberg's records conflicted with the findings in her records. But in making this observation, the ALJ impermissibly substitutes his expert medical opinion for that of the treating doctor. *Nguyen*, 172 F.3d at 35.

A review of Dr. Solberg's treatment records (ECF No. 6 at 303-16, 327-28, 342-48, 357-70) shows findings, observations, and conclusions that are very consistent with these records, and with the opinions she gave. Gloria was referred to Dr. Solberg for treatment for "ptsd, anxiety, depression, major depressive disorder." She was having "bad [symptoms]"; at the first visit, she was "panicky[,] depressed, anxious, [and suffering from] crying spells, moods swings, low energy, apathy, anhedonia, anger, irritability" and nightmares. *Id.* at 315. Dr. Solberg noted that Gloria had previously been hospitalized at Butler Hospital for a nervous breakdown. *Id.* The observation of similar "bad symptoms" persisted throughout her notes for office visits. Although the doctor would sometimes make notes that in isolation could be read positively, *e.g.*, "hanging in there" (*id.* at 309), "doing OK" (*id.* at 307), "feeling a little better" (*id.* at 362), these niceties must be seen in the context of the entire record.

A thorough review of the record leaves the Court convinced that substantial evidence does not support the ALJ's finding that Dr. Solberg opinions "have little persuasive value" and that her opinions are "not consistent with her own treatment notes." *Id.* at 36. In fact, the record reveals that just the opposite is true—Dr. Solberg's treatment notes fully support her opinions. Gloria's mental health symptoms arising from major depressive disorder, generalized anxiety disorder, and mood disorder were far more significant than the ALJ's characterization. Furthermore, the ALJ did not properly apply the regulatory factors of consistency

8

and supportability from 20 C.F.R. § 404.1520c, which is an error of law that the Court reviews de novo. *Ward*, 211 F.3d at 655.[4]

## IV. CONCLUSION

The Court GRANTS Gloria K.'s Motion to Reverse or Remand (ECF No. 11) and DENIES the Commissioner's Motion to Affirm (ECF No. 13). The Court remands this case to the Commission for further action consistent with this order.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

January 30, 2024

---

[4] Gloria also challenges the vocational expert's lack of an explanation for his methodology or basis for the numbers of job cited. Because the Court is remanding this matter on the first ground, there is no need to address this issue. *See* 20 C.F.R. § 416.920(a)(4) (noting that disability evaluation is a sequential process). If the Commission upon remand decides that it needs the expert's testimony, the Court is confident that the testimony will be as specific and detailed as the law requires.

9